

**SO ORDERED,**

**Judge Jason D. Woodard**

**United States Bankruptcy Judge**

**The Order of the Court is set forth below. The case docket reflects the date entered.**

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF MISSISSIPPI

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| ALLEN EDWARD CROSTHWAIT | ) | Case No.:  05-19292-JDW |
| | ) | |
| Debtor. | ) | Chapter   11 |

| | | |
|---|---|---|
| DAVID E. BAIRD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | A.P. No.:   15-01089-JDW |
| | ) | |
| ALLEN EDWARD CROSTHWAIT, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION[1]

This adversary proceeding came before the Court for trial on August 28,

2018, having been removed from the Chancery Court for the First Judicial

---

[1] This Memorandum Opinion and Order constitutes findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, applicable to adversary proceedings in bankruptcy pursuant to Federal Rule of Bankruptcy Procedure 7052.

District of Chickasaw County, Mississippi, to this Court by debtor-defendant Allen Edward Crosthwait (the "Defendant").

Plaintiff David E. Baird (the "Plaintiff") and Defendant own neighboring tracts of land.  While cutting timber from his own land, the Defendant crossed the property line and cut over 14 acres of timber from the Plaintiff's property. The Defendant now contends he owns the property, and therefore the timber, by adverse possession.

Having considered the evidence, the argument of counsel, and the law, the Court concludes that the Plaintiff has clear legal title of record to the property and the trees that were growing there, and the Defendant has failed to meet the elements of adverse possession.  The Plaintiff is due statutory damages and expenses under Mississippi Code Annotated § 95-5-10(1) and (3).[2] The Court also finds that the Defendant did not willfully or recklessly cut the Plaintiff's timber; thus, the Plaintiff is not entitled to enhanced damages under § 95-5-10(2).

## I.  <u>JURISDICTION</u>

This Court has jurisdiction pursuant to 28 USC §§ 151, 157(a) and 1334, and the *United States District Court for the Northern District of Mississippi's Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc* dated

---

[2] All statutory references are to the Mississippi Code Annotated, unless noted otherwise.

August 6, 1984.  This is a core proceeding as set forth in 28 USC § 157(b)(2)(A),

(B), (C), (E), and (O).  This adversary proceeding was removed from state court

and involves state law causes of action and affirmative defenses, but the issues

center around whether the land and the timber are property of the bankruptcy

estate.  Thus, this Court has jurisdiction.  28 USC § 157; *Endeavour GP, LLC*

*v. Endeavour Highrise, L.P. (In re Endeavour Highrise, L.P.)*, 432 B.R. 583,

628-29 (Bankr. S.D. Tex. 2010) ("Identifying, quieting title to, and obtaining

possession of property of the estate is a critical part of administering the estate.

. . .").

## II.   <u>FINDINGS OF FACT[3]</u>

The facts are relatively straightforward.  The Plaintiff owns a large tract

of land bordered by the Defendant's large tract of land.  The Plaintiff's tract is

entirely covered in timber, both 70 to 75-year-old hardwood trees and 20 to 30

year-old pine trees.  The Defendant's land is almost entirely cultivated row

crop land.  In many places, the crop extends up to the property line.

In late September 2014, the Defendant hired D.L. Boyd to cut the small

amount of timber on the Defendant's land.  The Defendant was not present

when the logging occurred.  Instead, he relied on Mr. Boyd to determine the

---

[3] To the extent any of the findings of fact are considered conclusions of law, they are adopted
as such.  To the extent any of the conclusions of law are considered findings of fact, they are
adopted as such.

property line and cut accordingly. Mr. Boyd is a logger, not a surveyor, and has no surveying certifications of any kind.

After the trees were cut and the dispute arose, both parties hired surveyors to determine the proper boundaries. The surveyors agree that the Plaintiff is correct. The Defendant's own surveyor, Harold Dendy, agrees that the Defendant cut over 14 acres of hardwood and pine trees on the Plaintiff's property.

This is best illustrated by Plaintiff's Exhibit 15, which was admitted into evidence and is attached to this Opinion. The boundaries of the Plaintiff's tract are clearly indicated by the four straight red lines noted in the legend as "Boundary 120 ac." The Defendant's tract is immediately east (not including the large stand of timber north of County Road 414) and north of the Plaintiff's tract.[4] The meandering lines inside the Plaintiff's tract mark the areas where the Defendant cut the Plaintiff's timber.

The Defendant clearly cut trees on land to which the Plaintiff has clear legal title. The Defendant asserts that these were actually his trees, relying on his contention that he planted some of the pine trees that run along the eastern boundary. Witness Eddie Wiggs credibly testified, however, that he witnessed the Plaintiff's father planting the pine trees in the late 1980's.

---

[4] For illustrative purposes, the Court modified this exhibit by adding blue boundary lines and the words "Defendant's Tract."

4

Mr. Wiggs further testified that he has spent over 50 years regularly hunting on the property, and that there was no evidence of anyone other than the Plaintiff occupying the property. The Court finds Mr. Wigg's testimony to be credible.

The Defendant contends that there was an old fence line to the west of the north-south property line and that the timber fell within that fence line.[5] No witness testified to the presence of a fence other than the Defendant and his employees. Neither surveyor noted a fence. Further, if the Defendant believed that he owned property to the old fence line, he would have cut the trees all the way to the fence line on the southern border, or at a minimum claim that he also adversely possessed those trees. The Defendant does not claim that the trees cut at the north end of the property fall to the east of the fence. The Court finds that there was not a fence and, even if there was, it was no longer standing and would not have put any party on notice that the Defendant was claiming any timber as his own. This finding is supported by the credible testimony of the Plaintiff and Mr. Wiggs.

While the Defendant may have depended on Mr. Boyd to determine the property line, he did so at his peril. Mr. Boyd was clearly the Defendant's agent and determining the property line and cutting the correct trees were clearly in

---

[5] The Defendant relies on Farm Services Agency (the "FSA") reports and the maps attached. (Defendant's Exhibit 7). The maps, some of which date to the 1950's, do include a line, but nothing indicates it is a fence line. This line may just be an old map section line.

5

the scope of his employment. *Wood v. Mossy Oak Properties, Inc.*, 120 So.3d 443, 446 (Miss. Ct. App. 2013) ("A principal may be held liable for the torts of its agent that are committed within the scope of the agent's employment."). That said, the Court finds no malicious intent on the part of the Defendant and no indication that he intended to steal the timber. The Defendant did not have any belief that the trees that were being cut belonged to the Plaintiff. The Defendant and his agent simply got the property line wrong.

## III.   CONCLUSIONS OF LAW

As previously noted, the Plaintiff's claims and the Defendant's defenses are all grounded in state law. Notwithstanding, this Court can resolve these claims and apply state law in doing so. *Butner v. U.S.*, 440 U.S. 48, 58 (1979).

### A.   Mississippi Code § 95-5-10

The Defendant clearly cut trees on property to which the Plaintiff has clear legal title of record. Section 95-5-10 provides *in toto*:

(1) If any person shall cut down, deaden, destroy or take away any tree without the consent of the owner of such tree, such person shall pay to the owner of such tree a sum equal to double the fair market value of the tree cut down, deadened, destroyed or taken away, together with the reasonable cost of reforestation, which cost shall not exceed Two Hundred Fifty Dollars ($250.00) per acre. The liability for the damages established in this subsection shall be absolute and unconditional and the fact that a person cut down, deadened, destroyed or took away any tree in good faith or by honest mistake shall not be an exception or defense to liability. To establish a right of the owner prima facie to recover under the provisions of this subsection, the owner shall only be required to show that such timber belonged to such owner, and that such timber was cut down, deadened, destroyed or taken away by the

6

defendant, his agents or employees, without the consent of such owner. The remedy provided for in this section shall be the exclusive remedy for the cutting down, deadening, destroying or taking away of trees and shall be in lieu of any other compensatory, punitive or exemplary damages for the cutting down, deadening, destroying or taking away of trees but shall not limit actions or awards for other damages caused by a person.

(2) If the cutting down, deadening, destruction or taking away of a tree without the consent of the owner of such tree be done willfully, or in reckless disregard for the rights of the owner of such tree, then in addition to the damages provided for in subsection (1) of this section, the person cutting down, deadening, destroying or taking away such tree shall pay to the owner as a penalty Fifty-five Dollars ($55.00) for every tree so cut down, deadened, destroyed or taken away if such tree is seven (7) inches or more in diameter at a height of eighteen (18) inches above ground level, or Ten Dollars ($10.00) for every such tree so cut down, deadened, destroyed or taken away if such tree is less than seven (7) inches in diameter at a height of eighteen (18) inches above ground level, as established by a preponderance of the evidence. To establish the right of the owner prima facie, to recover under the provisions of this subsection, it shall be required of the owner to show that the defendant or his agents or employees, acting under the command or consent of their principal, willfully and knowingly, in conscious disregard for the rights of the owner, cut down, deadened, destroyed or took away such trees.

(3) All reasonable expert witness fees and attorney's fees shall be assessed as court costs in the discretion of the court.

MISS. CODE ANN. § 95-5-10. This statute establishes the remedy for cutting down trees belonging to another, regardless of good faith, and provides additional damages if the cutting was done willfully or with reckless disregard for the rights of the true owner. *Stockstill v. Gammill*, 943 So.2d 35, 46 (Miss. 2006).

### i.  *Liability Under § 95-5-10(1)*

Section 95-5-10(1) requires that the Plaintiff prove that he owned the trees and that the Defendant cut them down without the Plaintiff's consent. There is no dispute as to whether the Defendant had the trees cut.  He did. The Plaintiff has established that the trees belonged to him and that they were cut down by the Defendant and his agent, without the consent of the Plaintiff.

The statute provides, "[t]he liability for the damages established in this subsection shall be absolute and unconditional and the fact that a person cut down, deadened, destroyed or took away any tree in good faith or by honest mistake shall not be an exception or defense to liability."  MISS. CODE ANN. §95-5-10(1).  Thus, even though the Defendant mistakenly believed he was having his own timber cut, he is still liable.  Accordingly, the Plaintiff is entitled to the statutory remedy of double the fair market value of the trees that were cut down plus the reasonable cost of reforestation not to exceed $250 per acre.

The Court accepts the calculations of William White Canale, RF, ACF, who was qualified as an expert forester.  Mr. Canale testified that 14.57 acres were cut and calculated that double the fair market value for the trees is $66,383.94.  Although Mr. Canale stated in his report that he included the cost of reforestation in this number, he did not.  It is clear from the calculations that $66,383.94 is simply double the fair market value of the harvested trees.

Although the Plaintiff did not introduce evidence regarding reforestation costs, "[t]he statute does not require that the owner produce evidence of market value or reforestation costs." *Muirhead v. Vaughn*, 878 So.2d 1028, 1032 (Miss. 2004). The evidence was clear that the property was heavily forested with mature trees and is not particularly close to any road. Thus, the Plaintiff is entitled to the maximum reforestation costs allowed by the statute, $250 per acre, for total reforestation costs of $3,642.50. The reforestation costs plus double the fair market value of the trees totals $70,026.44.

   *ii.*   *Additional Damages Under § 95-5-10(2)*

   Section 95-5-10(2) provides for added damages if the cutting was done willfully or with reckless disregard for the rights of the owner of the trees. "This implies both knowledge and intent or a degree of recklessness so gross as to constitute willfulness. Mere mistake or carelessness is not enough." *E.L. Bruce Co. v. Edwards*, 3 So.2d 846, 847 (Miss. 1941). Mere recklessness is also not sufficient. *Howse v. Russell*, 48 So.2d 628, 629 (Miss. 1950). The recklessness must be so gross as to constitute willfulness. *Id.* "[The Supreme Court of Mississippi] has always been cautious in the infliction of the statutory penalty, and will allow it only where the facts are well proved and where the testimony shows the trespass to have been willful, or the negligence so gross, or the indifference so real, or the lack of good faith so evient [sic], as to be tantamount to willfulness." *Id.* at 630 (quoting *Seward v. West*, 150 So. 364,

366 (Miss. 1933)). With regard to liability under 95-5-10(2), the Supreme Court of Mississippi has long held that when a party acts in good faith, "he will not be required to make a survey or resort to any unusual or troublesome means to ascertain boundaries not plainly visible." *Seward*, 150 So. at 366.

The Court does not find that the Defendant intentionally cut the Plaintiff's trees. He believed that he was having his own trees cut and had no knowledge that the property line had been crossed. His actions were not willful, as the term is used in the statute.

The Defendant also did not cut the timber with reckless disregard for the Plaintiff's rights. The Defendant intended for Mr. Boyd to find the correct line and to only cut the Defendant's trees, but Mr. Boyd did not find the correct line. The Defendant did not recklessly guess at the boundary and begin cutting. He requested that Mr. Boyd find the line and cut to it. Because the Defendant did not willfully cut the trees or do so with reckless disregard for the Plaintiff's rights, the Plaintiff is not entitled to additional damages under § 95-5-10(2).

*iii.    Court Costs Under § 95-5-10(3)*

Section 95-5-10(3) gives "a trial judge discretion to award expert witness fees and attorney's fees to a litigant who prevails on a claim of cutting of timber." *Stockstill*, 943 So.2d at 49. The Court accepts the fees listed in Plaintiff's Exhibit 19 as reasonable expenses. These costs include fees for the

professional services and expert testimony of Canale Forest Management Co., the survey by J.R. Caldwell, Jr, and the legal fees of Stephen P. Livingston, Sr., which are reasonable under the standards set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). The Defendant shall be responsible for these costs, which total $8,163.00.

The Defendant is also responsible for the reasonable legal fees of Rex F. Sanderson, but not all of the fees submitted in Plaintiff's Exhibit 20. The fees associated with the prosecution of the criminal case against the Defendant are not part of this civil case and the Defendant should not bear those costs. Those fees total $762.50 and relate to Mr. Sanderson's communications with the Defendant's criminal defense attorney and with the district attorney's office.

Additionally, the Court denied the Plaintiff's first Motion for Summary Judgment on December 7, 2016 due to evidentiary deficiencies, and further stated, "[t]his is a case that needs to be tried with live testimony." (Dkt. # 74). Notwithstanding, the Plaintiff filed a Second Motion for Summary Judgment almost two years after the deadline for dispositive motions. (Dkt. # 125). The Second Motion for Summary Judgment was untimely and merely restated the arguments from the first Motion for Summary Judgment. The Second Motion for Summary Judgment was denied. (Dkt. # 127).

The Court also denied the Plaintiff's first Motion in Limine. (Dkt. # 110). Again, the Plaintiff filed a Second Motion in Limine, which was untimely and

11

recited the same arguments as the first Motion in Limine. (Dkt. # 126). The costs associated with the Second Motion for Summary Judgment and Second Motion in Limine are not reasonable and the Defendant will not be responsible for those costs. The remainder of Mr. Sanderson's fees are reasonable and meet the *Johnson* standards. 488 F.2d 714. Thus, the Defendant is responsible for $23,008.35 of Mr. Sanderson's legal fees and expenses.

In addition, Plaintiff's counsel may submit an application evidencing attorney fees and expenses incurred during the trial. *O&G Leasing, LLC v. Canyon Drilling Co. (In re O&G Leasing, LLC)*, No. 3:14CV831TSL-RHW, slip op. at 8-16 (S.D. Miss. June 3, 2015). The Defendant will not be responsible for any post-trial costs, as the Court requested no post-trial briefing and in fact instructed the Plaintiff not to file a post-trial brief. (Dkt. # 140).

## B.    Adverse Possession

The Defendant has raised the affirmative defense of adverse possession. The Defendant bears the burden of proving by clear and convincing evidence that he adversely possessed the Plaintiff's property. *Thornhill v. Caroline Hunt Tr. Estate*, 594 So.2d 1150, 1152-53 (Miss. 1992). Six elements are required to prove an adverse possession claim in Mississippi: "for possession to be adverse it must be (1) under claim of ownership; (2) actual or hostile; (3) open, notorious, and visible; (4) continuous and uninterrupted for a period of ten years; (5) exclusive; and (6) peaceful." *Id.* To succeed, the Defendant must

12

prove each element. *O'Neal v. Blalock*, 220 So.3d 234, 240 (Miss. Ct. App. 2017).

    i.    *Under Claim of Ownership*

The Defendant's actions must be "sufficient to fly a flag over the property and put the actual owners on notice that the property was being held under an adverse claim of ownership." *Roberts v. Young's Creek Inv. Inc.*, 118 So.3d 665, 669-70 (Miss. Ct. App. 2013) (internal quotations omitted). The possessory acts required may vary depending on the characteristics of the land. *Apperson v. White*, 950 So.2d 1113, 1117 (Miss. Ct. App. 2007). "Adverse possession of 'wild' or unimproved lands may be established by evidence of acts that would be wholly insufficient in the case of improved or developed lands." *Id.* Wild land is property that is unsuitable for occupancy or "putting to husbandry or farming." *Broadus v. Hickman,* 50 So.2d 717, 719 (Miss. 1951).

In *Apperson*, the Court of Appeals of Mississippi concluded that the possessor adversely possessed the wild land of his neighbor, because the possessor's predecessor in interest constructed and maintained a barbed wire fence, the possessor's parents cultivated the land as children, and the possessor harvested timber on the land for over forty years. *Apperson*, 950 So.2d at 1117. These acts were found to place the original land owner on notice of the possessor's claim of ownership. *Id.*

13

In *Broadus v. Hickman*, the Supreme Court of Mississippi instructed that when wild lands are at issue, actual occupation or cultivation are not necessary when the land is not of a type to allow for any permanent useful improvement and when the continued claim of the possessor has been evidenced by public acts of ownership. 50 So.2d at 720. The possessor in *Broadus* successfully possessed the land because he paid taxes on the land at issue,[6] visited and "went over" the property from time to time, had the land surveyed (and the surveyor placed stakes at the corners and blazes along some of the property lines), and executed a turpentine lease on the property. *Id.*

In *McCaughn v. Young*, the possessor succeeded because he paid the taxes on the property for many years, during which the owner did not pay taxes; used timber from the land to the same extent that he did on his own land, with the knowledge of the owner; placed mortgages of record on the land; and offered the land for sale to the public. 37 So. 839 (Miss. 1905).

The Defendant's actions clearly fall short of what Mississippi courts consider an act of possession, and they did not put the Plaintiff on notice of the Defendant's claim of ownership. Mr. Wiggs credibly testified that he never

---

[6] "The payment of taxes is one factor as to possession and whether an adverse possessor has paid property taxes on the land in controversy is not conclusive of the claim of ownership." *Buford v. Logue*, 832 So.2d 594, 602 (Miss. Ct. App. 2002) (citing *Houston v. U.S. Gypsum Co.*, 652 F.2d 467, 474 (5th Cir. 1981). There is no evidence that the Defendant ever paid any ad valorem taxes on the Plaintiff's property.

14

noticed any change in the property indicating a claim of ownership by the Defendant during the extensive time he spent on the property.

The Defendant claimed there was an old fence on the property that evidenced his claim to some of the property, but, based on the evidence, the Court found that there was not a fence. Even if there had previously been a fence, it had not been maintained to put others on notice. Moreover, even if there had been a fence, "[t]he mere presence of a fence, without more, has never been sufficient to sustain a claim of adverse possession." *Double J Farmlands, Inc. v. Paradise Baptist Church*, 999 So.2d 826, 829 (Miss. 2008); *Scott v. Anderson-Tully Co.*, 154 So.3d 910, 916 (Miss. Ct. App. 2015) (quoting *Double J Farmlands* in regard to forest property that was clear-cut).

Unlike the defendants in *Apperson*, the Defendant in this case did not perform any physical acts that would put the Plaintiff on notice of his claim to the property. He did not cultivate the land. There was credible testimony that the Plaintiff's father planted the pine trees, not the Defendant. The hardwoods, which constituted the majority of the timber, were over 70 years old. Additionally, there was no evidence introduced that the Defendant had previously harvested any timber on the property.

The Defendant did not claim any other acts of ownership other than the planting of the pine trees and the presence of the fence. The Court does not find that the Defendant planted the trees or that there was a fence, or even the

15

vestiges of a fence that would have given notice that the Defendant claimed the property as his own. Thus, there are no physical acts of ownership that would establish his adverse possession claim.

Additionally, the Defendant offered no evidence that the Defendant engaged in any public acts of ownership. There was extensive testimony about the Defendant's dealings with the FSA. However, these interactions centered around what the Defendant was planting on the land he actually owned and did not involve the property at issue. The reports were only relevant because they included maps that also showed the land neighboring the Defendant's. The FSA reports do not establish that the Defendant exercised a claim of ownership over the property, because none of the timberland was cultivated.

There was no evidence that the Defendant paid the ad valorem taxes on the land. There was simply no evidence that the Defendant did anything that would give notice to the Plaintiff that he was claiming ownership of his land. Because the Defendant fails to meet the first element of adverse possession, his affirmative defense fails, but the Court will address the remaining elements while the record remains fresh.

### ii. *Actual or Hostile*

In order to be considered a hostile possession there must be a "manifest intention" to possess the property against the claim of all others, and contrary to the rights of the true owner. *Magee v. Magee*, 37 Miss. 138, 153 (Miss. 1859).

16

"Possession is defined as effective control over a definite area of land, evidenced by things visible to the eye or perceptible to the senses." *O'Neal*, 220 So.3d at 241.  Permission defeats any claim of adverse possession. *Apperson*, 950 So.2d at 1118.

In order to find that the Defendant's acts constitute an actual or hostile possession, the Court would first have to find that the Defendant had possession.  As previously stated, there is no indication from the evidence that the Defendant had any control over the property.  Moreover, the Defendant did not produce any evidence that his alleged control was perceivable in any way. The credible testimony of Mr. Wiggs, who hunted on the property for most of his life, established that no change had been made to indicate that the Defendant had possession.  Thus, the Defendant has failed to meet the actual or hostile requirement of his adverse possession claim.

### iii.    *Open, Notorious, and Visible*

An adverse possession of land must be open, notorious, and visible because the landowner must have actual or constructive knowledge that there is an adverse claim to his property. *Dean v. Slade*, 63 So.3d 1230, 1237 (Miss. Ct. App. 2010).  In order to give this notice, the possessor "must unfurl his flag on the land, and keep it flying, so that the actual owner may see, and if he will, that an enemy has invaded his domains, and planted the standard of conquest." *Roberts*, 118 So.3d at 669.

17

The Defendant did nothing in this case to indicate to the Plaintiff that he was making an adverse claim to the property. Again, Mr. Wiggs testified that he never noticed anything indicating the Defendant was asserting ownership during extensive years he has spent hunting on the property. Because the Defendant's acts were not open, notorious, and visible, the Plaintiff did not have actual or constructive knowledge of the Defendant's claim. Thus, the Defendant has not met the third element for his claim.

iv.    *Continuous and Uninterrupted for a Period of Ten Years*

The Mississippi Code requires continuous and uninterrupted possession of the disputed property for at least ten years. MISS. CODE ANN. § 15-1-13; *O'Neal*, 220 So.3d at 242. "[O]ccasional use of someone else's property without an enclosure does not pass the test of adverse possession." *Ellison v. Meek*, 820 So.2d 730, 736 (Miss. Ct. App. 2002).

The Defendant claims that he planted the pine trees in 1994 to 1995 and so he meets the ten-year requirement. However, the Court found that the Plaintiff's father planted the pine trees, not the Defendant. The Defendant did not claim that he planted the hardwood trees.

The Defendant cannot meet this element of his claim because of the reasons mentioned above: there was no actual possession or change to the land in a way to indicate that he was possessing the land. Accordingly, the Defendant cannot meet the ten-year requirement because there has been no

18

activity on the property to be continuous and uninterrupted for ten years.  No timber was previously harvested.  No fence was erected.  No part of the disputed property was cultivated.  There was no signage.  Thus, there is no possession, much less possession that was continuous and uninterrupted for ten years.

### v.   *Exclusive*

The possessor must demonstrate an intention to possess the land to the exclusion of all others and his "conduct must afford an unequivocal indication that he is exercising [the] dominion of a sole owner." *Roberts*, 118 So.3d at 671. This does not mean that no one else can use the property. *Apperson*, 950 So.2d at 1119.  To be considered exclusive, the possessor's use of the property must be consistent with an exclusive claim to the right to use the property.  *Id.*

Because the Defendant could not show that he had actual or hostile possession, he cannot prove that his possession was exclusive.  *Id.* ("Exclusive use is at the most basic level the intent of actual and hostile possession.").  The Defendant was not exercising dominion over the property in any way that would evidence an exclusive right to its use.  Thus, the Defendant has not proven this element of adverse possession.

### vi.   *Peaceful*

The presence of a dispute over the use of land does not thwart a claim of adverse possession.  *O'Neal*, 220 So.3d at 243.  "Simple disputes often arise

between neighboring landowners, but do not rise to the level of destroying the peaceful existence between them." *Apperson,* 950 So.2d at 119 (citing *Dieck v. Landry*, 796 So.2d 1004, 1009 (Miss. 2001)).

There was no evidence of any dispute between the parties until the actions giving rise to this adversary proceeding. There was also no evidence that the Defendant was claiming any rights in the Plaintiff's property, and so there was no reason for a dispute to arise.

As stated above, these are elements and not factors. Because the Defendant has failed to prove each element of adverse possession, his affirmative defense fails.

## IV.   <u>CONCLUSION</u>

The Defendant has not proven his affirmative defense of adverse possession. The Plaintiff has proven the requirements of Mississippi Code § 95-5-10(1), and is entitled to (1) double the fair market values of the trees, $66,383.94, and (2) reforestation costs, $3,642.50. Additionally, the Plaintiff is entitled to the approved fees and expenses totaling $31,171.35. Any application for additional trial attorney fees and expenses shall be submitted by the Plaintiff no later than October 10, 2018. The Defendant shall file any response by October 17, 2018. A separate Final Judgment will be entered following resolution of all attorney fee issues.

##END OF OPINION##



David Baird
Pt of Sec 17,18   T14S R2E   Chickasaw Co., MS